IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

DANA O'DELL
KATHY O'DELL, *on behalf of themselves and all similarly situated individuals*,

           Plaintiffs,

v.

BANK OF AMERICA, N.A.,

           Defendant.

Civil Action No. 7:17CV467

## COMPLAINT

COME NOW Plaintiffs, Dana O'Dell and Kathy O'Dell ("Plaintiffs"), on behalf of themselves and all similarly situated individuals, by counsel, and file this Complaint against Defendant, Bank of America, N.A. ("Bank of America"). Plaintiffs allege as follows:

### PRELIMINARY STATEMENT

1. As the entities that perform the day-to-day management of loans on behalf of lenders and investors, "servicers can have a direct and profound impact on borrowers." *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024) [hereinafter 2013 Regulation X Amendments]. One of the ways mortgage servicers can have a profound and adverse impact on borrowers is through the furnishing of inaccurate information to credit reporting agencies.

2. The 2007-2008 financial crisis exposed pervasive consumer protection problems in the mortgage servicing industry. *See* 2013 Regulation X Amendments, *supra* at 10700. For example, the Government Accountability Office "found pervasive problems in broad segments of

the mortgage servicing industry impacting delinquent borrowers, such as servicers who have misled, or failed to communicate with, borrowers, lost or mishandled borrower-provided documents supporting loan modification requests, and generally provided inadequate service to delinquent borrowers." *Id.*

3. As a part of its response to the 2007-2008 financial crisis, Congress established the Bureau of Consumer Financial Protection (the "Bureau") and granted it with broad rulemaking, enforcement, and supervisory powers related to Federal consumer financial law, including over the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.[1] 12 U.S.C. §§ 5481-5603. Both RESPA and the FCRA provide protections to borrowers that are designed to protect the furnishing of derogatory, erroneous information by their mortgage servicers. Dodd-Frank, Pub. L. No. 111-203, 124 Stat 1376 (2010).

4. Plaintiffs' class action claim challenges Bank of America's practice of furnishing information to consumer reporting agencies regarding disputed payments after it receives a qualified written request from consumers. RESPA and the Bureau's regulations specifically prohibit servicers from furnishing derogatory payment information that has been properly disputed for 60 days. RESPA, 12 U.S.C. § 2605(e)(3). Despite RESPA's clear requirements, Bank of America reported adverse information to the credit bureaus regarding the payments that were the subject of Plaintiffs' qualified written request. Based on Bank of America's conduct, Plaintiffs assert a class claim for Bank of America's violations of RESPA, 12 U.S.C. § 2605(e)(3).

---

[1] *See generally* Margaret R.T. Dewar, *Regulation X: A New Direction for the Regulation of Mortgage Servicers*, 63 Emory L. J. 175, 177-80 (2013) (providing background on the establishment of the Bureau and the consumer protection problems exposed by the 2007-2008 financial crisis).

5. Plaintiffs also allege individual claims against Bank of America for failing to fully and properly investigate Plaintiffs' disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 168l(p).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

8. Plaintiffs are each a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c).

9. Bank of America is a foreign national association authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia. At all times relevant to this Complaint, Bank of America was a mortgage loan servicing company governed by RESPA and a furnisher governed by the FCRA.

## FACTS

### Legal Background

10. "RESPA is a remedial consumer protection statute and imposes obligations upon servicers of federally related mortgage loans." 2013 Regulation X Amendments, *supra* at 10709.

11. "Specifically, with respect to mortgage servicing, the consumer protection purposes of RESPA include responding to borrower requests and complaints in a timely manner,

maintaining and providing accurate information, helping borrowers avoid unwarranted or unnecessary costs and fees, and facilitating review for foreclosure avoidance options." *Id.*

12. Consistent with these purposes, RESPA sets forth certain procedures and requirements mortgage services must follow in responding to borrower inquiries, including where a borrower disputes the accuracy of their payment histories. *See* 12 U.S.C. § 2605(e).

13. With respect to payment disputes, RESPA expressly prohibits a mortgage servicer from furnishing information to credit bureaus during the 60-day period after receiving a borrower's written dispute relating to the payment. 12 U.S.C. § 2605(e)(3); 12 C.F.R. § 1024.35(i).

14. A servicer that fails to comply with the requirements of § 2605(e) is liable to the borrower for each failure for actual damages and, in the case of a pattern or practice of noncompliance, additional damages of up to $2,000. 12 U.S.C. § 2605(f).

15. These requirements and the corresponding civil liability were first added to RESPA in 1990 by the Cranston-Gonzalez National Affordable Housing Act as part of a broader effort to set a national housing policy so that every American family would be able to afford a decent home in a suitable environment. *See* Cranston-Gonzalez National Affordable Housing Act, Pub. L. No. 101–625, §§ 101, 102, 941, 104 Stat 4079 (1990).

16. In responding to the 2007-2008 financial crisis, Congress further amended § 2605 by increasing penalties that servicers incur for violations of § 2605(e) and authorizing the Bureau to prescribe regulations that are appropriate to carry out RESPA's consumer protection purposes. *See* 2013 Regulation X Amendments, *supra* at 10709.

17. RESPA's remedial nature provides a necessary incentive for mortgage servicers to comply with its requirements. *See* 2013 Regulation X Amendments, *supra* at 10701. Given the unique attributes of the servicing market, servicers are incentivized "to look for opportunities to

impose fees on borrowers to enhance revenues." *Id.* The Bureau observed that servicers "earn revenue from fees assessed on borrowers, including fees on late payments, fees for obtaining force-placed insurance, and fees for services, such as responding to telephone inquiries, processing telephone payments, and providing payoff statements." *Id.* Thus, the imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve the statute's consumer protection purposes.

### Facts Specific to Plaintiffs

18. In 2014, Plaintiffs entered a Home Affordable Modification Program Trial Period Plan with Bayview Loan Servicing, which was servicing their mortgage loan at the time.

19. Plaintiffs made all their payments as instructed and were offered and accepted a permanent modification with Bayview Loan Servicing effective November 1, 2014.

20. Plaintiffs made all their permanent modification payments as agreed to with Bayview Loan Servicing.

21. The servicing of Plaintiffs' mortgage account was transferred from Bayview Loan Servicing to Bank of America, effective on or around August 16, 2016.

22. After the transfer, Plaintiffs continued to make their modified payments as required.

23. Plaintiffs received a formal notice from Bank of America, dated November 15, 2016, indicating that they were in default under the terms of their note and deed of trust.

24. Even though Plaintiffs always paid their mortgage each month, Bank of America's notice of default erroneously indicated that Plaintiffs were in default by the sum of $2,533.06 on their loan.

25. On or about April 4, 2017, Plaintiffs obtained copies of their credit reports, which reflected that their Bank of America account was past due for the period of December 2016 through March 2017.

26. This information was erroneous as Plaintiffs had been making timely modified payments in accordance with their modification agreement with Bayview Loan Servicing.

27. On or around April 24, 2017, Plaintiffs sent a qualified written request to Bank of America. This correspondence was sent to the address that Bank of America designated for this type of correspondence.

28. Plaintiffs' qualified written request explained that they were not 30 days late as Bank of America was reporting and disputed that the payments were late. Plaintiffs specifically requested, "[p]lease do not report any payments late to the credit bureaus."

29. In the qualified written request, Plaintiffs explained that they received a permanent loan modification as of November 1, 2014, and that they had made all the payments as instructed. Plaintiffs also provided proof of payments to facilitate the dispute.

30. On or around April 24, 2017, Plaintiffs also sent written disputes letters to the credit bureaus. In their dispute letters, they provided proof of their mortgage payments.

31. Bank of America failed to conduct a reasonable investigation of Plaintiffs' dispute and the derogatory information continued to be reported on Plaintiffs' credit reports.

32. Plaintiffs continued making all monthly payments to Bank of America in the amount required by the permanent modification.

33. In June of 2017, Plaintiffs issued follow-up dispute letters to the credit bureaus that indicated that Bank of America was continuing to furnish derogatory and inaccurate information that was being reported on their credit reports.

34. Notwithstanding this second round of dispute letters, the derogatory, inaccurate information remained on Plaintiffs' credit reports.

35. Bank of America continued to furnish information regarding the disputed payments to the credit bureaus during the 60-day period following its receipt of Plaintiffs' qualified written request in violation of RESPA, 12 U.S.C. § 2605(e)(3).

36. For example, Bank of America told the credit bureaus that the disputed payments should remain on the Plaintiffs' credit reports in response to the Plaintiffs' dispute letters.

37. Plaintiffs also assert that Bank of America provides monthly reporting updates to the credit bureaus and did so as to the named Plaintiffs while their qualified written request was pending.

38. In addition, a credit report from Equifax dated May 20, 2017, showed that Bank of America continued to report that Plaintiffs had past due balance on their Bank of America mortgage account. Specifically, the report stated that the status was "30-59 days past due" with an "amount past due of $1,297. The Bank of America tradeline indicated it was reported on "5/20/17."

39. Upon information and belief, this inaccurate and unlawful reporting was caused by Bank of America's uniform failure to adopt any policies or procedures to comply with 12 U.S.C. § 2605(e)(3).

40. Upon information and belief, Bank of America had no policy or procedure to cease the furnishing of adverse information regarding a borrower's payment and status of the account to the credit bureaus during the 60-day period following receipt of a qualified written request concerning the disputed payment.

41. Plaintiffs suffered actual damages, including damage to reputation and lost credit offers due to the furnishing of derogatory and untrue credit information about Plaintiffs to various third parties.

42. At all times pertinent to this Complaint, Bank of America's processing of consumer reports was willful and carried out in reckless disregard for a consumer rights as set forth under the FCRA. By example only and without limitation, Bank of America's conduct was willful because it was intentionally accomplished through intended procedures and as Bank of America's efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

**COUNT ONE:**
**VIOLATION OF RESPA, 12 U.S.C. § 2605(e)(3)**
**(CLASS CLAIM)**

43. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

44. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a Class initially defined as:

> All persons residing in the United States (1) who have a federally related mortgage with Bank of America; (2) who submitted a notice to Bank of America asserting an dispute regarding a payment that included the name of the borrower and the account number; and (3) about whom Bank of America subsequently furnished adverse information regarding the disputed payment to a consumer reporting agency within 60 days of receiving the borrower's qualified written request within three years prior to the filing of this case.

Plaintiffs are members of the Class.

45. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all their claims is impractical. The class members' names and addresses are identifiable through Bank of America's internal business records, and they may be notified of the pendency of this action by published and/or mailed notice.

46. **Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include (1) whether Bank of America's furnishing of adverse information concerning disputed payments is a part of a pattern or practice of noncompliance, and (2) whether additional damages are appropriate in light of such a pattern or practice of noncompliance.

47. **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members' claims.

48. **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiffs have retained counsel competent and experienced in such litigation and intend, with their counsel, to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members' interests. Neither Plaintiffs nor their counsel have any interest that might conflict with their vigorous pursuit of this action.

49. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to

effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Bank of America's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

50. Plaintiffs submitted a written qualified written request to Bank of America on April 24, 2017, disputing the arrears Bank of America claimed were past due on their account and indicating that their mortgage should not be reported as past due.

51. Bank of America received Plaintiffs' qualified written request, which included their full names and account number.

52. Nonetheless, Bank of America continued to furnish information regarding the disputed payments to the credit bureaus during the 60-day period following its receipt of Plaintiffs' qualified written request in violation of RESPA, 12 U.S.C. § 2605(e)(3).

53. Specifically, Bank of America continued to update its reporting of the mortgage account on a monthly basis and in response to Plaintiffs' dispute to the credit bureaus.

54. Because of Bank of America's conduct, Plaintiffs suffered concrete and particularized harm including damage to their creditworthiness and credit scores for the publication of derogatory credit information that Bank of America was precluded from publishing about the Plaintiffs, loss of credit, damage to reputation, embarrassment, aggravation, the cost of certified mail postage and other emotional distress.

55. This is a pattern and practice for Bank of America. It does not cease its consumer reporting of tradelines in the ordinary course of business when a qualified written request is pending. For example, Bank of America had the same course of conduct as to both of the Plaintiffs. Additionally, Plaintiffs' counsel is also aware of another case where Bank of America did not cease the reporting of disputed payment information during the pendency of those consumers' qualified written request. Plaintiffs allege that Bank of America has uniform policies that it follows, and the example of these four consumers is consistent and in accordance with Bank of America's pattern and practice.

56. Because of Bank of America's violations of RESPA, 12 U.S.C. § 2605(e)(3), Plaintiffs and the putative class members are entitled to recover "any actual damages to each of the borrowers in the class," "any additional damages" "in an amount not greater than $2,000 for each member of the class," their attorneys' fees, and costs. 12 U.S.C. § 2605(f).

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (INDIVIDUAL CLAIM)

57. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

58. On one or more occasions within the past two years, by example only and without limitation, Bank of America violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes.

59. When Plaintiffs disputed their account with the credit bureaus, Bank of America used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as Bank of America. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

60. When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

61. Upon information and belief, the ACDV form is the method by which Bank of America has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

62. Upon information and belief, Plaintiffs allege that the credit bureaus forwarded Plaintiffs' dispute via an ACDV to Bank of America.

63. Bank of America understood the nature of Plaintiffs' disputes when it received the ACDV form.

64. Upon information and belief, when Bank of America received the ACDV form containing Plaintiffs' disputes, Bank of America followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

65. Upon information and belief, when Bank of America receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in their computer system is itself accurate.

66. Because of Bank of America's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiffs suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

67. Bank of America's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Bank of America was negligent, entitling Plaintiffs to recover under 15 U.S.C. §1681o.

68. Plaintiffs are entitled to recover actual damages, statutory damages, costs, and attorney's fees from Bank of America in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT THREE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (INDIVIDUAL CLAIM)

69. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

70. On one or more occasions within the past two years, by example only and without limitation, Bank of America violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

71. As Plaintiffs detailed in the previous Count, Bank of America has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

72. Bank of America was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

73. Bank of America does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

74. Bank of America understood Plaintiffs' disputes and that Plaintiffs claimed the information was inaccurate.

75. Because of Bank of America's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiffs suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

76. Bank of America's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §

1681n. In the alternative, Bank of America was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

77. Plaintiffs are entitled to recover actual damages, statutory damages, costs, and attorney's fees from Bank of America in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT FOUR:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
### (INDIVIDUAL CLAIM)

78. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

79. On one or more occasions within the past two years, by example and without limitation, Bank of America violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiffs' credit files without also including a notation that these accounts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

80. Specifically, Bank of America failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

81. Upon information and belief, Plaintiffs allege that Bank of America rarely, if ever, added the XB code or other notation that an account was disputed when it responded to ACDV forms.

82. Furthermore, Bank of America knew that Plaintiffs disputed the subject account through their dispute letters to the credit reporting agencies.

83. Plaintiffs' disputes were bona fide as their account was not past due because they made monthly payments for the period of December 2016 through March 2017.

84. Because of Bank of America's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiffs suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

85. Bank of America's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Bank of America was negligent, entitling Plaintiffs to recovery against Bank of America under 15 U.S.C. §1681o.

86. Plaintiffs are entitled to recover actual damages, statutory damages, costs, and attorney's fees from Bank of America in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiffs request that the Court enter judgment against Bank of America on behalf of themselves and the class they seek to represent for: (1) certification of this matter to proceed as a class claim; (2) actual and additional statutory damages as pled herein; (3) attorney's fees, litigation expenses, and costs of suit; (4) punitive damages for their individual FCRA claims; and (5) such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**DANA O'DELL**
**KATHY O'DELL**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, Esq., VSB #72791
Casey S. Nash, Esq., VSB #84261
Andrew J. Guzzo, Esq., VSB #82170
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com

Email: casey@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
*Counsel for Plaintiffs*